IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

EVAN FOSTER,                                    §
                                               §
Plaintiff,                                     §
                                               §
v.                                             §        Case No. 6:25-cv-522-JDK-KNM
                                               §
REDEMPTION RANCH OUTREACH,                     §
INC., D/B/A PADRES PLACE                        §
RECOVERY, AND MICHAEL                           §
HOUSEHOLDER, INDIVIDUALLY,                      §
                                               §
Defendants                                     §

## PLAINTIFF'S ANSWERS TO THE COURT'S INTERROGATORIES

Plaintiff Evan Foster files the following Answers to the Court's Interrogatories and in support would show as follows:

1.    **During what period of time were you employed by the Defendant?**

**ANSWER:**

I was employed by Padres Place (operated by Michael Householder and Jody Householder) from September 8, 2024 through November 4, 2025.

2.    **Who was your immediate supervisor?**

**ANSWER:**

My immediate supervisor was Michael Householder. Jody Householder was also an owner/operator of Padres Place and provided direction as well. I reported to Michael Householder daily to receive instructions regarding the house, including the plan for the day, week, and month. Additionally, I was initially trained by an individual named Josiah Humbert who left in October 2024.

3.      **Did you have a regularly scheduled work period? If so, specify.**

**ANSWER:**

My hours varied by period of employment as follows:

September 2024 through February 2025:

Sunday–Thursday, 6:00 AM–10:30 PM; Friday–Saturday, 7:00 AM–midnight. Additionally, I had late-night standby (on-duty) from 11:00 PM–2:45 AM approximately 3–4 times per week for clients returning from work.

March 2025 through August 9, 2025:

Sunday–Thursday, 7:30 AM–10:30 PM; Friday–Saturday, 7:30 AM–midnight. Additionally, I had late-night standby until 2:45 AM.

August 10, 2025 through November 4, 2025:

Sunday–Thursday, 6:00 AM–10:30 PM; Friday–Saturday, 7:00 AM–midnight. Additionally, I had late-night standby until 2:45 AM.

In addition to the hours set forth above, I was required to remain on the premises at all times as a live-in employee and could not freely leave the property even during purported downtime. Clients knocked on my door throughout the night for various reasons, and I was required to be available on a moment's notice at all times. For the first five months of employment (September 2024 through early February 2025), I was the sole employee and was essentially on duty 24 hours a day, 7 days a week with no days off after mid-October 2024.

4.      **What was your title or position? Briefly describe your job duties.**

**ANSWER:**

My title was House Manager/Live-In Technician. My duties included, but were not limited to, the following:

(1) issued medications to clients three times daily; counted, filled, and logged prescriptions; issued medications to clients leaving for work prior to standard medication time (5:00–7:00 AM);

(2) responsible for opening the house to clients returning from late-night jobs (10:00 PM–2:45 AM); issued drug screens, medications, and logged all information in the client portal;

(3) administered random drug tests upon client arrival, return from job searching, and at intake;

(4) scheduled psychiatric evaluations and medical doctor appointments for all new clients; set up pharmacy pickups; handled insurance and prescription transfers;

2

(5) conducted new client intakes including searching property, confiscating medications and phones, and issuing bedding, towels, hygiene items, and clothing donations as well as responsible for handling discharge procedures;

(6) transported clients daily to AA/NA meetings, doctor's appointments, probation/parole appointments, DMV, Social Security office, court, work, job searches, recovery events, church, Walmart, fish fries, conferences, and service events; picked up new clients from Dallas and surrounding areas;

(7) completed and scanned daily reports for PHP and IOP classes; updated client portal regularly with issues, write-ups, appointments, medication counts, and drug screen results; reported to Michael Householder daily and provided weekly updates;

(8) cooked three meals per day for clients during the first several months, later transitioning to cooking rotations; managed food donations; issued and enforced chore assignments; conducted room checks; maintained the property van;

(9) led in-house meetings and AA/NA meetings; monitored security cameras; handled house phone calls; called police/ambulance as needed; monitored family visitation and phone calls; and

(10) performed all other duties as directed by Michael and Jody Householder.

5.      **What was your regular rate of pay?**

**ANSWER:**

I was paid a flat rate of $1,200.00 per month for the entirety of my employment, regardless of the number of hours worked. Beginning March 17, 2025, an additional $70.00 per month was deducted from my pay for vision and dental insurance under the employer's group plan, reducing my effective take-home pay to $1,130.00 per month. I was paid primarily by direct deposit, with a paper check issued toward the end of my employment.

6.      **Provide an accounting of your claim, including: (a) dates; (b) regular hours worked; (c) overtime hours worked; (d) pay received versus pay claimed; (e) total amount claimed.**

**ANSWER:**

See the attached spreadsheet, attached as Exhibit A.

7.      **When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?**

**ANSWER:**

The first formal complaint to the employer regarding FLSA violations was made when this lawsuit was filed. Plaintiff had ongoing discussions with Michael Householder during the course of his employment regarding the hours he was working and the demands placed on him, but Plaintiff was not specifically aware of his rights under the FLSA until consulting with counsel.

8.    **Was this complaint written or oral? (If written, attach a copy.)**

**ANSWER:**

The formal complaint was made through the filing of this lawsuit, which is in written form. Any prior informal discussions with the employer regarding working conditions and hours were oral.

9.    **What was your employer's response? (If written, attach a copy.)**

**ANSWER:** Defendants have not acknowledged the FLSA violations; they have filed an Answer in this case.

_____
Plaintiff Signature

BEFORE  ME,  the  undersigned  authority,  on  this  day,  personally  appeared EVAN FOSTER____(name of plaintiff), who being first duly sworn, deposes and says that he  has read the foregoing Answers to Interrogatories, knows the contents of same, and to the best of his/her knowledge and belief, the same are true and correct.

SWORN  TO  AND  SUBSCRIBED  before  me  on  this  _31_  day  of ___MARCH_____, 2026.

NOTARY PUBLIC

_____
Signature of Person Taking Acknowledgment
Notary Stamp Print Name: Lionel WAN
Title: Notary Public
Serial No. (If any):  135 444 26
Commission Expires:  04/26/2026

Lionel  Wan
My Commission Expires
4/26/2026
Notary ID
131544426
NOTARY PUBLIC
STATE OF TEXAS

4